UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL DESHON LEMONS, CDCR #P-83680,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>A. CAMARILLO, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:14-cv-02814-DMS-DHB<br><br>**ORDER GRANTING DEFENDANT VALENZUELA'S MOTION FOR SUMMARY JUDGMENT** |

　　　Terrell Deshon Lemons ("Plaintiff"), a prisoner at Ironwood State Prison in Blythe, California, proceeding pro se and in forma pauperis ("IFP"), is proceeding with a Second Amended Complaint ("SAC") filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (ECF No. 60).

/ / /

/ / /

/ / /

1

## I. Procedural History

On January 24, 2017, Defendant Valenzuela[1] filed a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 (ECF No. 142). On February 13, 2017, the Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and set a briefing schedule (ECF No. 148). Plaintiff was given until June 9, 2017, to notify the Court that he did not oppose Defendant Valenzuela's Motion or file an Opposition. (*Id.* at 2.)

That date has long since passed and Plaintiff has not filed an Opposition or any notification relating to the Motion currently before the Court. The Court has determined no oral argument is required, and took Defendant Valenzuela's Motion for Summary Judgment under submission for resolution on the papers pursuant to S.D. CAL. CIVLR 7.1.d.

Having carefully considered the record as submitted, the Court now GRANTS Defendant Valenzuela's Motion for Summary Judgment.

## II. Factual Background

### A. Plaintiff's Claims

On August 15, 2012, while housed at Centinela State Prison ("CEN"), Plaintiff's cell was searched "during a massive search of Facility C-2 Building." (SAC at 4.) Plaintiff and his cellmate were returning to their cell at approximately 3:30 p.m. and realized that a radio was missing that was not documented in the cell search. (*Id.* at 4-5.) Plaintiff and his cellmate "called upon Sgt. Cortez and 3rd Watch Building Officer Liss to verify that Plaintiff's radio was indeed missing." (*Id.* at 5.)

The next day, on August 16, 2012, Plaintiff approached Correctional Officer Camarillo and showed him that the radio had not been documented as confiscated during

---

[1] This Motion is brought by Defendant Valenzuela only. The remaining Defendants are not currently moving for summary judgment and remain in this action.

the cell search. (*Id.*) Plaintiff alleges Camarillo responded by denying that Plaintiff's name or identification was on the radio. (*Id.*) Plaintiff "immediately produced valid documentation" that showed "Sgt. D. Pollard had recently compensated Plaintiff with that exact radio." (*Id.*) However, Defendant Camarillo "insisted 'he was not giving [Plaintiff's] radio back.'" (*Id.*)

Plaintiff then "walked about 10 feet" and spoke to an unidentified Sergeant who "advised [Plaintiff] to 602 (appeal)." (*Id.* at 6.) Plaintiff returned to his cell to begin writing the appeal and later that day a radio was "placed in front of Plaintiff's cell" by another inmate. (*Id.*)

On August 23, 2012, Plaintiff was exiting the "chowhall" when Camarillo decided to search Plaintiff. (*Id.*) Plaintiff alleges he complied with the search but the pat down search became "aggressive." (*Id.*) Plaintiff asked Camarillo "why are you grabbing me like that?" (*Id.* at 5.) While receiving no response from Camarillo Plaintiff claims he "felt a shot of pain from his testicles to the gut of his stomach." (*Id.*) Plaintiff alleges he was unable to remain in the "spread eagle" position due to the pain but Camarillo told him to "put your [expletive] hands in the air and squeezed his grasp harder." (*Id.* at 7.) Plaintiff "bucked in an attempt to free himself" but he was "taken to the ground immediately by Defendant Camarillo from the front and Defendants J. Butcher and D. Zamora from behind." (*Id.*)

Plaintiff was "subdued and restrained on the ground" by Butcher and Zamora while "Camarillo continued to punch Plaintiff upon the face and while applying a choke-hold." (*Id.*) Plaintiff claims that "after allowing this to go on for some time," Butcher "pulled and/or waved" Camarillo off Plaintiff. (*Id.*)

Following this incident, Camarillo allegedly told his supervisors that he "felt 'contraband' on Plaintiff and Plaintiff resisted." (*Id.*) However, Plaintiff claims that no contraband was ever found on him. (*Id.*) He further claims that Defendants Greenwood, Valenzuela and Pollard "all accepted as true" that Plaintiff had contraband despite no evidence of any contraband. (*Id.* at 8.)

3

Plaintiff was escorted to the Program Office where he "immediately told" Defendant Pollard that Camarillo had used excessive force and that it was "in reprisal for Plaintiff's complaint about his radio the week prior." (*Id.*) Plaintiff also claims he told Valenzuela and Greenwood about the excessive force by Camarillo as well. (*Id.*) Plaintiff claims that Greenwood "declined to accept and/or investigate Plaintiff's version of the events." (*Id.* at 9.) Greenwood allegedly told Plaintiff that "you are a liar, you assaulted my officer . . . and if it's the last thing [Greenwood] does, [Greenwood] is going to make sure that Plaintiff would be transferred to Pelican Bay, so that Plaintiff would never see his family again." (*Id.*)

A few hours later, Plaintiff was again brought to the Program Office where he would be transferred to Administrative Segregation ("Ad-Seg"). (*Id.* at 8.) However, Plaintiff claims he realized that his "radio was not on the inventory list/receipt and immediately brought it to Sgt. Pollard's attention." (*Id.*) Pollard sent Defendant Ramirez to locate Plaintiff's radio and bring it to Plaintiff. (*Id.*) When the radio was located, Pollard "signed '602' on the inventory sheet to show she placed the radio in Plaintiff's property upon departure." (*Id.*) However, on September 21, 2012, Plaintiff received his "allowable property" while housed in Ad-Seg but there was no radio contained in the property. (*Id.*) Plaintiff appealed the issue and was again "granted a Super III G.E. radio." (*Id.*)

On October 28, 2012, while still housed in Ad-Seg, Plaintiff was permitted to receive "non-contact (behind the glass) visits" with his wife. (*Id.* at 9.) Plaintiff claims that his wife was "ordered to a closed room by a Sgt. or Lt. Ramirez and subjected to being searched in further reprisal and [to] discourage Plaintiff's wife from visiting." (*Id.*)

On April 3, 2014, Plaintiff "brought this (threat) and other situations where Plaintiff experienced other reprisal/retaliation" to former Warden Miller's attention. (*Id.*) Plaintiff claims she "assured Plaintiff that this would not occur" while in the presence of Greenwood. (*Id.*) The next day, on April 4, 2014, Plaintiff submitted an "Inmate Request CDCR 22" form to Miller regarding the threat by Greenwood which was received by Miller on April 14, 2014, and forwarded to Defendant Galeana, a correctional counselor. (*Id.* at

10.) Galeana then passed Plaintiff's complaint to Defendant Angulo, also a correctional counselor. (*Id.*)

On April 21, 2014, Angulo called Plaintiff into his office "to reiterate/reassure Plaintiff that he would indeed by referred by ICC to be transferred to a Level III prison, not a Level IV prison (Pelican Bay State Prison) as previously threatened" by Greenwood. (*Id.*) Four days later, Angulo "retracted this reassurance" on the grounds that there had been a "miscalculation in points." (*Id.*) However, Galeana called Plaintiff into his office to inform him that he was "taking Plaintiff back to ICC for Level III transfer" because he had contacted the "Head Office in Sacramento" to review his calculations for accuracy. (*Id.*)

Plaintiff was later called back again to Galeana's office between May 16, 2014, and May 22, 2014, and was told that "some guy in CSR, at Centinela, have a stick up his ass because nobody aggravated your offense to make you a high-risk, high security Level IV inmate." (*Id.*) Previously in August of 2010, Plaintiff claims Valenzuela found Plaintiff "not guilty" of mutual combat with another inmate but "approximately 2 years later, and coincidentally in August of 2012, Plaintiff was re-issued the same rule violation report (RVR) 115 and found 'guilty' for fighting." (*Id.* at 11.) Plaintiff alleges there was no other documentation of this finding other than Valenzuela's entry in a log book. (*Id.*) Plaintiff claims this was done to make him eligible for a Level IV placement. (*Id.*)

On June 9, 2014, Plaintiff was transferred to Pelican Bay State Prison, a Level IV prison, by himself in a van. (*Id.*) Plaintiff claims that this was intentional so that his "radio would be confiscated once again, this time without compensation." (*Id.*) Plaintiff claims he was subjected to further acts of retaliation while housed at Pelican Bay. (*Id.* at 11-12.)

On August 23, 2012, following the alleged incident with Camarillo, Plaintiff claims Defendant Villalobos-Valenzuela "was on notice and notified of the incident" but waited an "hour and 30 minutes after the excruciating pain" to examine Plaintiff." (*Id.* at 15.) Plaintiff further alleges Villalobos-Valenzuela "failed to report any and all marks, bruises and/or scratches upon Plaintiff's body." (*Id.* at 16.) Plaintiff claims that in the days

5

following the incident, he "started to notice his vision getting blurry in his right eye, the eye Defendant Camarillo was punching, while being restrained." (*Id.*) Plaintiff did not immediately assume it was serious but it later "flared up and [Plaintiff] had to be rushed to CTC 2-4 weeks later." (*Id.*) Plaintiff claims to continue to suffer from "negative reactions to bright lights and blurriness." (*Id.*)

### B. Defendant's Claims

Defendant Valenzuela, a Correctional Lieutenant, was employed at Centinela State Prison ("CEN") until October of 2013. (*See* Def.'s Valenzuela's Decl., ECF No. 142-4, ¶ 1.) As a Lieutenant, Valenzuela's job responsibilities included "overseeing and supervising the general activities and the day-to-day operations of the facility." (*Id.* ¶ 2.) In addition, Valenzuela was responsible for "ensuring that staff met all security standards," as well as serving as a "senior hearing officer" who conducts disciplinary hearings and appeal reviews. (*Id.*) This also included being "responsible for collecting and preparing documents in response to use of force incidents." (*Id.*)

On August 23, 2012, the date of the incident with Defendant Camarillo, Valenzuela was in the program office when he heard "the yard alarm and the institutional radio report an incident" in the dining hall. (*Id.* ¶ 3.) Valenzuela arrived at the scene and "saw that Sergeant Pollard was already handling the incident and that inmate Lemons had been restrained." (*Id.*) Valenzuela claims that prior to this incident he was "not aware of any purported risk that Officer Camarillo posed to Plaintiff" and that Plaintiff had never expressed any concerns to him about Defendant Camarillo. (*Id.* ¶ 4.)

Sergeant Pollard collected reports from each of the individual officers involved in the incident, completed a "CDCR 837 Crime/Incident Report, Part C," and provided this report to Valenzuela. (*Id.* ¶ 5.) It was Valenzuela's duty to collect the report from Pollard and conduct his own review of the incident. (*Id.*) Valenzuela was responsible for reviewing the individual reports, preparing a "summary of the events as described by the officers," and assemble an "Initial Incident Report package." (*Id.*)

On August 23, 2012, Pollard provided Valenzuela with reports from "the officers

who participated in or witnessed the incident between Officer Camarillo and inmate Lemons." (*Id.* ¶ 6.) Following a review of these reports, Valenzuela "prepared a summary of the incident, as had been reported by staff." (*Id.* ¶ 8.) An administrative disciplinary hearing "on the Rules Violation Report concerning the August 23, 2012 incident" was conducted on May 2, 2014. (*Id.* ¶ 9.) Criminal Charges were also brought against Plaintiff in state court for battery on a peace officer. (*See* Jeffrey Decl., Ex. A, ECF No. 142-3, Pl's Depo. 102:18-24.) Plaintiff was convicted by a jury and sentenced to six years. (*Id.*) At his trial, Plaintiff was represented by counsel and called several fellow inmates as witnesses. (*Id.* at 102:18 - 103:18.)

On May 24, 2012, an administrative hearing was held at CEN regarding the Rules Violation Report and Plaintiff was found "guilty of the charges and assessed 150 days forfeiture of behavioral credits and sentenced to a 12 month term in administrative segregation." (Valenzuela Decl., Ex. D., ECF No. 142-4, Rules Violation Report dated May 2, 2014.)

**III.  Defendant Valenzuela's Motion for Summary Judgment**

Defendant Valenzuela seeks summary judgment on the grounds that: (1) Plaintiff waived his Eighth Amendment claims against Valenzuela; (2) Plaintiff cannot establish an Eighth Amendment failure to protect claim or a Fourteenth Amendment due process claim; (3) his Eighth Amendment claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (4) Valenzuela cannot be sued in his official capacity for monetary damages; and (5) Valenzuela is entitled to qualified immunity. (*See* Def's. Mem. of P&As in Supp. of Mot. for Summ. J., ECF No. 142-1, at 512-22 (hereafter "Def's. P&As").)

**A.  Standard of Review**

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c))  If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Id.* at 324.

To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations," Bias *v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citations omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323).  The opposing party cannot rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

### B. Eighth Amendment Claim

#### 1. Waiver of claims

Valenzuela moves for summary judgment of the Eighth Amendment claim brought against him on the ground that Plaintiff waived this claim during his deposition. (*See* Def's. P&As at 12.)  While it does appear in Plaintiff's deposition that he intends to bring only due process claims against Valenzuela, his SAC is verified and remains the operative pleading containing an Eighth Amendment claim against Valenzuela. (*See* SAC at 6-12, 27.) Therefore, the Court will not enter summary judgment as to this claim on the ground that Plaintiff waived these claims.  However, the Court will consider summary judgment on the grounds that Plaintiff has failed to raise a genuine dispute as to any material fact.

#### 2. Failure to Protect Claim

Plaintiff alleges in his SAC that Valenzuela failed to "take disciplinary or other actions to cure the known pattern of physical 'verbal abuse of inmates by Defendant

8

Camarillo" which "constituted 'deliberate indifference' to the Plaintiff and other prisoners['] safety." (SAC at 18.)

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). "Protecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg*, 794 F.2d at 460.

Thus, to show that a prisoner has been subject to cruel and unusual punishment by an officer's failure to protect him, he must point to evidence in the record which shows that the alleged deprivation was objectively "sufficiently serious," i.e., that the conditions he faced posed a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted); *see also Hudson*, 503 U.S. at 5, 8.

In a failure to protect case, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. Prison officials display a deliberate indifference to an inmate's well-being when they know of and consciously disregard an excessive risk of harm to that inmate's health or safety. *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Thus, "deliberate indifference" entails something more than mere negligence, but may be satisfied with proof of something less than acts or omissions "for the very purpose of causing harm," or that a particular official "acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "Whether a prison official had the requisite

knowledge of a substantial risk" may be inferred if the prisoner produces evidence sufficient to show that the risk was "obvious." *Id*.

As set forth above, Plaintiff alleges in his SAC that Valenzuela, and other prison officials, were aware that Defendant Camarillo was both verbally and physically abusive to inmates. (*See* SAC at 18.) Plaintiff offers no other factual allegations to support his claim. In his Declaration, Valenzuela states "[p]rior to the August 23, 2012 incident, inmate Lemons had never communicated to me any safety concerns he had in regard to Officer Camarillo, or any of the other involved officers." (Valenzuela Decl. ¶ 4.) Valenzuela also declares that he "was not aware of any purported risk that Officer Camarillo posed to Plaintiff." (*Id.*) In his deposition, Plaintiff testified that he did not have "any idea" that he was going to have a confrontation with Camarillo on August 23, 2012, and "the whole thing came as a big surprise" to him. (Jeffery Decl., Ex. A at 118:19-25.) Plaintiff offers no specific factual allegations in his SAC or his deposition testimony that Valenzuela knew, or should have known, that Camarillo was a danger to Plaintiff.

When the moving party meets its initial obligation demonstrating that no genuine issue exists, the burden shifts to the opposing party to establish that a genuine issue of material fact does exist. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Plaintiff provides no factual evidence, exhibits or admissible affidavits to defeat Defendant's showing that he did not fail to protect him from harm in violation of his Eighth Amendment rights. Accordingly Defendant's Valenzuela's Motion for Summary Judgment as to Plaintiff's Eighth Amendment claims is GRANTED.

**C. Due Process Claim**

In his SAC, Plaintiff alleges that on August 23, 2012, "Defendants Capt. Greenwood, Lt. Valenzuela, and Sgt. Pollard failed to follow the 'excessive force procedure/protocol: secure a video interview or secure video facing chowhall." (SAC at 13.)

The Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. Const. amend. XIV. The procedural

guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest is avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484).

Defendant does not argue that Plaintiff has not alleged facts relating to his disciplinary conviction that constitute a liberty interest. Therefore, the Court will presume that Plaintiff has sufficiently alleged a liberty interest. When a liberty interest has been implicated as the result of a disciplinary charge, the Fourteenth Amendment requires prison officials to provide the prisoner with: (1) written notice of the charges at least 24-hours before the hearing; (2) the opportunity to appear in person at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders of the evidence relied on for their decision and the reasons for the action taken by the committee. *Wolff*, 418 U.S. at 564-66; *Neal*, 131 F.3d at 830; *Freeman*, 808 F.2d at 952 ("Although prisoners are entitled to be free from arbitrary action and conduct of prison officials, the protections against arbitrary action 'are the procedural due process requirements as set

forth in *Wolff v. McDonnell*.'").

Here, Plaintiff does not dispute that he received written notice or that he was deprived of the right to call witnesses. Instead, Plaintiff argues that he was denied access to evidence to rebut the charges. The only allegation that Plaintiff clearly sets forth as to Defendant Valenzuela is his alleged failure to videotape an interview with Plaintiff following the August 23, 2012 incident. In his deposition testimony, Plaintiff maintains that Valenzuela did not follow protocol and as a result, he could not rebut Defendants assertion that Plaintiff failed to report the alleged excessive force by Camarillo. (Jeffery Decl., Ex. A at 22, 119:20-120:22.) Plaintiff further maintains that Valenzuela denied his due process rights by failing to investigate his claims that Camarillo used excessive force against him. (*See id*. at 23, 121:4-13.)

Even if Plaintiff believes that Valenzuela's investigation was inadequate, that argument alone is insufficient to support a due process claims against Valenzuela. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved.")

Defendant argues that the disciplinary hearing came after Plaintiff's criminal trial at which time he had counsel and witnesses that testified on his behalf. (*See* Def.'s Ps & As at 20.) Moreover, it is not at all clear how the lack of a videotaped interview with Plaintiff would have made any difference in the outcome of Plaintiff's disciplinary hearing. As Defendant also notes, Plaintiff was able to tell his version of the events that occurred on August 23, 2012 as he testified at both his criminal trial and his disciplinary hearing. (*Id.*) Plaintiff provides no evidence, nor does he point to any evidence in the record, to rebut Defendant's showing that he was provided with the procedural protections guaranteed by *Wolff*.

For all these reasons, Defendant Valenzuela's Motion for Summary Judgment based on due process violations is GRANTED.

/ / /

12

### D. Eleventh Amendment

Defendant also seeks summary judgment to the extent Plaintiff seeks money damages against him based on actions taken in his "official" capacity. The Eleventh Amendment bars a prisoner's § 1983 claims against state actors sued in their official capacities, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Consequently, the Court GRANTS Defendant Valenzuela's Motion for Summary Judgment on Eleventh Amendment grounds.

### E. Qualified Immunity

Finally, Defendant argues that he is entitled to qualified immunity. Because the Court has found no triable issue of fact exists to show Plaintiff's constitutional rights were violated by Defendant Valenzuela, it need not reach any issues regarding qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## IV. Conclusion and Order

For all the reasons explained, the Court **GRANTS** Defendant Valenzuela's Motion for Summary Judgment (ECF No. 142-4) pursuant to Fed. R. Civ. P. 56 as to all of Plaintiff's claims against him.

**IT IS SO ORDERED**.

Dated: August 15, 2017

Hon. Dana M. Sabraw
United States District Judge